IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01114-RMR-KAS

RICHARD KINGSLAND,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion for Partial Judgment on the Pleadings** [#17].[1] Plaintiff filed a Response [#19] in opposition to the Motion [#17], though Defendant did not file a reply brief and the time to do so has elapsed. The Motion [#17] has been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See Order Referring Motion* [#21]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#17] be **GRANTED** and that Plaintiff's Second and Third Claims for Relief be **DISMISSED WITHOUT PREJUDICE**.

---

[1] "[#17]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

## I. Background

This matter arises from a September 8, 2020 motor vehicle accident involving Plaintiff and another driver, Egide Kana ("Mr. Kana"). Plaintiff alleges that Mr. Kana negligently caused the accident, injuring Plaintiff. *Compl.* [#3], ¶¶ 5-11. At the time of the accident, Mr. Kana carried $25,000 in insurance coverage through Allstate, while Plaintiff carried $250,000 per person/$500,000 per occurrence in underinsured motorist ("UIM") coverage through Defendant State Farm ("Defendant" or "State Farm"). *Id.*, ¶¶ 12-13, 16. Plaintiff recovered Mr. Kana's policy limits from Allstate. *Id.*, ¶ 14.

On October 23, 2020, Plaintiff notified Defendant of his UIM claim and requested a copy of his policy and declarations page in effect at the time of the accident. *Id.*, ¶¶ 17-18. Plaintiff alleges that as of April 2023, when he first filed his Complaint in state court,[2] Defendant still had not provided the requested copy of the policy and declarations page. *Id.*, ¶ 19.

Plaintiff also alleges that, on February 18, 2021, he requested payment from Defendant and provided medical records and bills totaling $20,350.98. *Id.*, ¶ 20. On May 7, 2021, he supplemented his request and provided medical records and bills totaling $22,752.98. *Id.*, ¶ 21. On June 1, 2021, Plaintiff requested Defendant's consent to settle with Mr. Kana's insurer. *Id.*, ¶ 22. About two days later, Plaintiff received a settlement offer for $11,846.96 from Defendant to resolve his UIM claim, along with a check in the amount of $846.96 representing payment of "Underinsured Bodily Injury." *Id.*, ¶¶ 23-24. On or about July 27, 2021, Defendant gave Plaintiff permission to settle with Mr. Kana's insurer for policy limits. *Id.*, ¶ 25. On September 30, 2021, Plaintiff again supplemented

---

[2] Defendant removed this matter from state court on May 3, 2023. *See Notice of Removal* [#1].

2

his request for payment of UIM benefits and submitted medical records and bills totaling $45,094.90. *Id.*, ¶ 26.

On approximately January 7, 2022, Defendant reiterated its previous settlement offer of $11,846.96. *Id.*, ¶ 27. On June 23, 2022, Plaintiff again supplemented his request for payment and submitted medical records and bills totaling $51,270.90. *Id.*, ¶ 28. Defendant acknowledged receipt on June 26, 2022. *Id.*, ¶ 29. About a month later, on July 26, 2022, Defendant conveyed a settlement offer of $34,710.90 to resolve the UIM claim and issued a check for $15,863.94, indicating that the check was for "current reasonable special damages being considered." *Id.*, ¶¶ 30-31.

On October 6, 2022, Plaintiff asked Defendant to explain the July 26 settlement offer and $15,863.94 check and how Defendant arrived at that settlement offer. *Id.*, ¶¶ 32-33. Additionally, Plaintiff provided an update regarding his medical treatment and symptoms and asked Defendant whether it had considered his future medical expenses, pain, and suffering. *Id.*, ¶¶ 34-35. Plaintiff alleges that Defendant did not request any additional information and did not respond to this October 6 correspondence. *Id.*, ¶¶ 36, 42. Meanwhile, on or about October 17, Defendant extended an updated settlement offer in the amount of $62,280.89 and issued two additional checks to Plaintiff, the first for $8,570.95 and the second for $999.04. *Id.*, ¶¶ 39-41. Both checks indicated that they were for "reasonable medical expenses currently being considered." *Id.* On January 23, 2023, Plaintiff sent his October 6 correspondence again and asked for a response. *Id.*, ¶ 43. On March 7, 2023, Defendant responded, stating that it had considered Plaintiff's medical bills, treatment, and pain and suffering in its evaluation and settlement offer. *Id.*, ¶¶ 44-46.

Plaintiff alleges that Defendant undervalued his UIM claim, failed to fully compensate him for his damages, unreasonably delayed payment of UIM benefits, failed to reasonably communicate, and failed to provide a reasonable explanation regarding its evaluation of his claim. *Id.*, ¶¶ 49-55, 59-60. Plaintiff asserts three claims against Defendant: (1) breach of contract; (2) statutory bad faith in violation of Colo. Rev. Stat. §§ 10-3-1115 and -1116; and (3) common law bad faith. *Id.*, ¶¶ 64-81. Defendant moves for judgment on the pleadings as to Plaintiff's Second and Third Claims for Relief, i.e., his bad faith claims, "because [Plaintiff] fails to establish the existence of any facts which support that [Defendant] acted unreasonably in regard to [his] underinsured-motorist benefits claim." *Motion* [#17] at 1.

## II. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Any party may move for judgment on the pleadings if there are no material facts in dispute and the dispute can be resolved on the pleadings and any judicially noticeable facts. *Ramirez v. Wal-Mart Stores, Inc.*, 192 F.R.D. 303, 304 (D.N.M. 2000) (citing Fed. R. Civ. P. 12(c)). "Judgment on the pleadings is appropriate only when 'the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1171 (D. Colo. 2015) (quoting *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012)). When considering a motion for judgment on the pleadings, the Court must "'accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings' in that party's favor." *Sanders*, 689 F.3d at

4

1141 (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)). Thus, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard applicable to a Rule 12(b)(6) motion. *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

Rule 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Court must evaluate "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

Under Colorado law, common law and statutory bad faith claims share a common element: the plaintiff must show that the insurer's conduct was unreasonable. *See, e.g.*, *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015) (*Fisher I*), *aff'd*, 419 P.3d 501, 506 (Colo. 2018) (*Fisher II*); *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012). To prevail on a claim of common law bad faith, the plaintiff

5

"must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) (citing *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004)). By contrast, to prevail on a statutory claim, a plaintiff need only show that the "insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Fisher I*, 419 P.3d at 990 (quoting Colo. Rev. Stat. § 10-3-1115(2)).

Whether an insurer acted reasonably is "determined objectively, based on proof of industry standards." *Goodson*, 89 P.3d at 415. "[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 848 (Colo. 2018) (quoting *Vaccaro*, 275 P.3d at 759); *see also Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) (stating that "an insurance company, however, may challenge claims which are fairly debatable") (citation omitted). "Fair debatability, however, 'is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case.'" *Schultz*, 429 P.3d at 848 (quoting *Sanderson*, 251 P.3d at 1218).

Here, Plaintiff "simply has not alleged facts which plausibly articulate *unreasonableness*." *Carraway v. State Farm Fire & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *6 (10th Cir. Aug. 22, 2023) (emphasis in original). Plaintiff's well-pleaded factual allegations include a bevy of communications between him and State Farm from October 23, 2020, through March 7, 2023, in which he repeatedly supplemented his medical bills and records while State Farm repeatedly supplemented its settlement offers

6

and payments. *See generally Compl.* [#3], ¶¶ 17-48. Plaintiff first submitted medical bills in February 2021 and supplemented them in May 2021, though in both instances the total was less than Mr. Kana's $25,000 in underlying policy limits. *Id.*, ¶¶ 13, 20-21. On June 3, 2021, just two days after Plaintiff sought State Farm's consent to settle, State Farm paid $846.96 and extended a settlement offer of $11,846.96. *Id.*, ¶¶ 22-24. Plaintiff supplemented his medical bills again in September 2021 and June 2022, while Defendant increased its offer and issued additional payment in July 2022. *Id.*, ¶¶ 26, 28-31. On October 6, 2022, Plaintiff provided an update regarding his medical treatment and symptoms. *Id*, ¶ 34. On October 17, 2022, Defendant increased its offer to $62,280.89 and issued two additional payments. *Id.*, ¶¶ 39-41.

Plaintiff's complaint "offer[s] 'only vague conclusions' that fail[] to 'establish that State Farm lacked a reasonable basis for the conduct described.'" *Carraway*, 2023 WL 5374393, at *6. His well-pleaded allegations establish that he sent State Farm medical records and bills totaling $51,270.90; that he settled with Mr. Kana's insurer for $25,000; that State Farm issued four checks: one for $846.96; one for $15,863.94, one for $8,570.95, and one for $999.04; and that State Farm's last settlement offer was for $62,280.89. *Compl.* [#3], ¶¶ 13-14, 24, 28, 30-31, 39-41. Added up, between State Farm and Allstate, Plaintiff has received $51,280.89, a sum almost identical to—and exceeding—his submitted medical bills, with State Farm offering an additional $11,000 to settle his claim, which overage reflects State Farm's inclusion of noneconomic damages. *See Compl.* [#3], ¶ 46 (acknowledging State Farm's inclusion of pain and suffering in its last offer); *cf. Traurig v. Owners Ins. Co.*, No. 20-cv-01489-CMA-SKC, 2022 WL 843888, at *5 (D. Colo. Mar. 22, 2022) (rejecting the plaintiff's assertion that the defendant acted

7

unreasonably by failing to consider her noneconomic damages when the defendant offered settlements amounts more than the documented economic damages and tortfeasor settlement).

Plaintiff has not pleaded any facts showing that State Farm's evaluation was unreasonable or that he is entitled to any benefits that he has not yet received. For example, the Complaint contains no allegations about the nature or severity of his injuries or their expected long-term impact. *Cf., e.g., Simental v. State Auto. Mut. Ins. Co.*, No. 21-cv-01725-CMA-NYW, 2022 WL 204603, at *2 (D. Colo. Jan. 24, 2022) (finding that the plaintiff had failed to plausibly allege she was entitled to additional benefits where she had pleaded only that her medical bills totaled $99,976.70 and that she had received $100,000 from the tortfeasor's insurer); *McKinney v. State Farm Mut. Auto Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *5 n.3 (D. Colo. Sept. 30, 2021) (stating that "there is no sum certain that an insured is entitled to for noneconomic damages"). The Complaint [#3] also contains no allegations that Defendant failed to pay undisputed medical expenses, *cf. Fisher II*, 418 P.3d at 502. Moreover, Plaintiff's Complaint [#3] "contains no factual allegations demonstrating that [Defendant's] alleged refusal to pay, or delay in paying, an undetermined amount in UIM benefits constitutes unreasonable conduct." *Simental*, 2022 WL 204603, at *3.

Nor has Plaintiff plausibly alleged that State Farm's investigation of his claim was unreasonable. At most, he alleges that, after he provided an update regarding his medical treatment and symptoms on October 6, 2022, Defendant "did not request any additional information from Plaintiff . . . in its evaluation of his UIM claim." *See Compl.* [#3] ¶¶ 34, 36. This is inadequate. *See Picard v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-0795-

8

WJM-KAS, 2024 WL 2923947, at *6, *8 (D. Colo. June 10, 2024) (granting defense summary judgment on statutory unreasonable delay/denial claim because the plaintiff "has not identified what further investigation could or would have uncovered," despite claiming that the defendant's investigation was inadequate); *see also Vansky v. State Farm Auto. Ins. Co.*, No. 20-cv-01062-PAB-NRN, 2022 WL 900160, at *7 (D. Colo. Mar. 28, 2022) (granting summary judgment for similar reasons).

Plaintiff also fails to allege a plausible bad faith claim based on the Defendant's alleged failure to promptly and effectively communicate with him about its settlement offers. Plaintiff complains of a supposed 10-month delay between September 2021 when he submitted additional bills and records and July 2022 when Defendant amended its settlement offer and issued additional checks. See *Response* [#19] at 6 (citing *Compl.* [#3], ¶¶ 26, 27, 31). He also complains of a gap between his October 6, 2022 request for an explanation of State Farm's settlement offer and payments and State Farm's March 7, 2023 explanation. See *Compl.* [#3] ¶ 47; *Response* [#19] at 8. Under Colorado law, insurers owe a good faith "duty to promptly and effectively communicate with anyone it was reasonably aware had or legitimately needed information pertaining to the handling of plaintiffs' claim." *Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010). However, an insurer does not act in bad faith by failing to provide a detailed breakdown of a settlement offer. *See, e.g., Irey v. State Farm Mut. Auto Ins. Co.*, No. 20-cv-01324-RBJ, 2020 WL 3577736, at *2 (D. Colo. July 1, 2020) (dismissing bad faith claims where the insurer's "explanation of the settlement offer [was] minimal, essentially that the medical bills appeared to have been covered by the wrongdoer's insurance, and that [the insurer] was offering a settlement . . . based on the information obtained to date.").

9

Moreover, Plaintiff's own allegations undercut his characterization of these two "gaps" in communication. Regarding the first ten-month period between Plaintiff's supplement on September 30, 2021, and Defendant's new evaluation in July 2022, Plaintiff acknowledges that on January 7, 2022, Defendant "reiterated a settlement offer in the amount of $11,846.96 to Plaintiff." *Response* [#19] at 6; *Compl.* [#3], ¶¶ 26-27. After Plaintiff submitted additional bills and records on June 23, 2022, Defendant acknowledged receipt on June 26, 2022, and issued payment and a new settlement offer on July 26, 2022. *Compl.* [#3], ¶¶ 28-31. Accepting all well-pleaded facts as true, Plaintiff's Complaint [#3] shows that there was no ten-month gap in communication.

The same is true of the alleged six-month gap between Plaintiff's October 6, 2022, correspondence "requesting an explanation of what the $34,710.90 settlement offer and the check for $15,863.94 represented" and Defendant's March 7, 2023 response. Plaintiff acknowledges that, on October 17, 2022, just eleven days after his correspondence, Defendant issued two checks and conveyed an updated settlement offer. *Id.*, ¶¶ 32-35, 39-41. He acknowledges that each check identified what it was for: "current reasonable special damages being considered" and "reasonable medical expenses currently being considered." *Id.*, ¶¶ 31, 40-41. When Plaintiff followed-up on January 23, 2023, Defendant provided additional information on March 7, 2023, and explained that it had considered all submitted medical bills and that the offer includes pain and suffering. *Id.*, ¶¶ 44-46. Again, accepting all well-pleaded facts as true, Plaintiff's Complaint [#3] shows no six-month gap in communication. At most, Plaintiff plausibly alleges a few, shorter lulls, which is insufficient to show that Defendant failed to reasonably communicate. *Cf. Carroll v. Safeco Ins. Co. of Am.*, No. 20-cv-00219-REB-NYW, 2021 WL 694798, at *1 (D. Colo.

10

Case No. 1:23-cv-01114-RMR-KAS   Document 35   filed 08/13/24   USDC Colorado
pg 11 of 12

Jan. 14, 2021) (rejecting insured's argument that "the duty to communicate is subject to a firm 30-day standard" as unsupported by relevant authority and lacking evidence).

Based on the foregoing, the Court finds that Plaintiff has failed to plausibly allege that Defendant's conduct was unreasonable. Accordingly, the Court **recommends** that the Motion [#17] be **granted** and that Plaintiff's statutory and common law bad faith claims be **dismissed without prejudice**. *See, e.g.*, *Carraway*, 2023 WL 5374393, at *8, *10 (affirming dismissal of insured's complaint but finding that the district court had erred in dismissing *with prejudice*).

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#17] be **GRANTED** and that Plaintiff's Second Claim for Relief (Violation of Colo. Rev. Stat. §§ 10-3-1115 and -1116) and Third Claim for Relief (common law bad faith) be **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the

district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

    Dated: August 13, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge